Fitzgerald *v.* The State.

## TOM FITZGERALD *v.* THE STATE.

CRIMINAL LAW. *Homicide.* Ordinarily, if a party assaulted kills his adversary in the conflict, he will be guilty of manslaughter only, the presumption being that the assault has excited his passion beyond control, and that he acts from sudden heat of passion and not from malice. But if the resistance of the assault is made by a deadly weapon, and the weapon is used in a cruel manner, not at all justified by the nature and danger of the assault, the offense amounts to murder.

### FROM WEAKLEY.

Appeal in error from the Circuit Court of Weakley county. CLINTON ADEN, J.

H. H. BARR for Fitzgerald.

ATTORNEY-GENERAL LEA, JNO. McGLOTHLIN and N. N. EDWARDS for the State.

DEADERICK, C. J., delivered the opinion of the court.

Plaintiff in error was convicted of murder in the second degree and sentenced to ten years' confinement in the penitentiary, and has appealed to this court.

The evidence shows that deceased and defendant met at a church in Dresden, on the 19th of September, 1882. Deceased was intoxicated; some of the witnesses say he staggered. On first meeting, the defendant asked deceased about a lie that the latter had told on him, to which deceased made no reply, and passed on. They had been unfriendly and had had a quarrel some time before. Near the church, after some

play amongst a crowd of negroes there assembled, de-- fendant and deceased wrestled, and both fell; some quarreling ensued and the lie passed; deceased said to defendant, if it had not been for the respect he had for his, defendant's, mother, he would have whipped him long ago. To this defendant replied, with an oath, he did not want him to have any respect for his mother. They were separated by by-standers, and defendant said, "if he touches me, I intend to kill him." Defendant had a knife in his hand at the time. Deceased had no weapon; he had a knife but put it in the pocket of his duster before the difficulty.

Defendant and' others, after the meeting closed, started home, and Ben Hamilton was holding deceased, and defendant told him "to turn him loose," and in the quarrel defendant "run his hand in his pocket." Deceased got out of his duster and pursued defendant. The stabbing occurred near Cottrell's gate, when defendant said, "damn him, if he touches me, I'll kill him. I'm ready for him." Deceased ran up, and defendant said, "stand back, I don't want to hurt you." Deceased went up to him, and some of the witnesses say, put his hand on him, others, struck him, and defendant began striking deceased, putting one arm around deceased and striking him repeatedly with the other. One witness states when deceased struck, defendant put his left arm around him and said, "damn you, come into me," and she heard a sound like something tearing, and saw repeated blows by defendant; that deceased, as defendant struck the first blow, grunted [and bent forward, and then de-

fendant threw his arm around him and repeated the blows. The deceased had received a number of knife wounds on the sides, shoulder, head and face, and died within twenty-four hours.

Just after the difficulty, defendant told a witness that he put his arm around deceased and held him until he cut him several times, and that his knife broke in the difficulty. And to another witness he said, within two hours after the stabbing, if he had had a better knife he would have done what he intended to do.

The conduct of the deceased was certainly reprehensible; much of it may be attributed to his intoxication. He did not have, or appear to have, any weapons when he approached and struck or laid his hands upon defendant, and said he intended to whip him; nor does it appear that he afterwards struck, or attempted to strike, the defendant any other blow than the first, but seemed to be utterly helpless in the hands of the defendant, who held him with one arm and stabbed him to death with the other.

This is the second verdict of murder in the second degree, upon evidence, upon the last trial, somewhat stronger against the defendant than in the first.

Ordinarily, a party assaulted, if he kills his adversary in the conflict, will be guilty of manslaughter only, the presumption being that the assault has excited the passion of the slayer beyond control, and that he acts from sudden heat of passion, and not from malice. But if the resistance of the assault is made by a deadly weapon, and the weapon is used in a cruel

manner, not at all justified by the nature and danger of the assault, the offense amounts to murder: 2 Bish. Crim. Law, secs. 724, 725.

Lord Tenterden, C. J., said that "it was not every slight provocation, even by a blow, which will, when the party receiving it, strikes with a deadly weapon, reduce the offense from murder to manslaughter, and if there had been any evidence of an old grudge, the crime would probably be murder": 2 Whar. Am. Crim. Law, sec. 995.

In this case we have the use of a deadly weapon, the existence of the old grudge, antecedent and contemporaneous threats, and after admissions which furnish strong evidence of malice.

The deceased, in his efforts to bring on a difficulty, in his state of intoxication, was not armed, and in his attack made no demonstration of the use, or purpose to use, a weapon.

The defendant said if deceased touched him he would kill him, and that he was ready for him, and to one who was keeping deceased back, "damn him, let him come," thus showing that he was then contemplating the use of the deadly weapon, in resistance of the invited assault. And when it was made, he at once resorted to his knife, thus showing that his act was most probably the result of malice, rather than sudden passion.

Says Hawkins: "Whenever it appears, from the whole circumstances of the case, that he who kills another on a sudden quarrel, was master of his temper at the time, he is guilty of murder, as if after the

quarrel he fall into other discourse and talk calmly thereon," or so talk of the killing, etc.: 2 Bish. Crim. Law, sec. 737.

Directly after the stabbing, the defendant spoke of having broken his knife in the stabbing, and said if he had had a better one he would have done what he intended to do. To two other witnessess, to one within two hours after the difficulty, and to the other, perhaps at a later period, but before the death of deceased, he said the same thing; meaning, obviously, that he intended to kill deceased. His threats before, and in the act, and after declarations manifest that the fatal stabbing was the result of malice, rather than sudden passion.

We are of opinion, therefore—while at the former trial in this court we intimated that we would have been better satisfied with a conviction of manslaughter—that the evidence in the present record sustains the finding of the jury, and the judgment will be affirmed.